UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Criminal Action No. 1:19-cr-10439-IT-3 |
| | * |
| WILLI ALEXIS PEREZ BAEZ, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

October 16, 2024

TALWANI, D.J.

Pending before the court is Defendant Willi Alexis Perez Baez's Motion Pursuant to 18 U.S.C. § 3582(c)(2) Based on the New Sentencing Guideline Downward Adjustment for Certain Zero-Point Offenders ("Mot. to Reduce Sentence") [Doc. No. 346], as briefed following the appointment of counsel, see Def.'s Mem. ISO Mot. to Reduce Sentence Pursuant to U.S.S.G. Amendment 821 (Def.'s Mem.") [Doc. No. 370]. For the following reasons, the motion is GRANTED.

I.  **Background**

Willi Alexis Perez Baez ("Perez") was indicted on November 13, 2019, on one count of conspiring to possess with intent to distribute 40 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. § 846, and one count of possessing with intent to distribute 40 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi). Indictment [Doc. No. 1]. On November 14, law enforcement executed a search warrant on a property used as a stash house by the drug operation in which Perez participated, and Perez was arrested as he attempted to flee the property. Inside the property, law enforcement recovered large quantities of drugs and two firearms, located in one of the bedrooms in a drawer

next to the bed. Also found in the bedroom closet were a trigger lock, dummy magazine, an apparent drug ledger on a notepad, and a photograph of Perez. Though surveillance showed that Perez used the premises to store drugs and frequented the apartment, it is undisputed that he did not reside at the property.

On December 14, 2021, Perez pleaded guilty to both counts in the Indictment. At the sentencing hearing, the Assistant United States Attorney noted that while Perez had not been charged based on gun possession or gun possession in furtherance of a drug conspiracy, the government's position at sentencing would be that the guns found at the property were attributable to Perez. The court inquired of Perez during the plea colloquy about the facts directly related to the drug charges, including that Perez was arrested upon leaving the property, but did not inquire about the guns.

The final Presentence Investigation Report prepared by the Probation Office included a two-level enhancement for possession of a firearm pursuant to U.S.S.G § 2D1.1(b)(1), and a guideline sentencing range of 87-108 months. Perez objected in his sentencing memorandum to the firearms being attributable to him under that guideline.

At the August 4, 2023 sentencing hearing, Perez's counsel continued to argue that there was no evidence that Perez utilized or brandished the weapons during any of drug activity observed by law but withdrew the objection and stipulated to possession and a two level enhancement under § 2D1.1(b)(1). The court adopted Probation's guidelines sentencing range of 87-108 months. Before imposing a sentence, the court considered the 18 U.S.C. § 3553 factors. Specifically, the court noted that the underlying offense was "a serious drug crime," and discussed the consequence of the opioid epidemic. The court also considered Perez's personal characteristics, his family ties, and his lack of prior criminal record, as well as the sentencing

range established by the United States Sentencing Commission. The court also took into account sentences imposed on similarly situated offenders by other courts.

Ultimately, the court imposed a sentence of 72 months—15 months lower than the low-end of the guideline range. In sentencing, the court emphasized (and the government agreed) that the sentenced imposed in the absence of a firearm enhancement would likely have been around 60-64 months, the average length of imprisonment for other offenders with the same primary guideline and criminal history score as Perez. Tr. of Sentencing Hearing 7:3-18 [Doc. No. 361].

Now, Perez moves to have that sentence reduced to 70 months on the ground that he is eligible for the zero-point offender sentence reduction pursuant to U.S.S.G. § 4C1.1(a)(7), which was adopted after Perez was sentenced but made retroactive by U.S.S.G. Amendment 821. Def.'s Mem. 1 [Doc. No. 370]. The government opposes the reduction. Gov't's Resp. in Opp. to Def's Mot. for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) ("Gov't's Resp.") [Doc. No. 373].

## II.  Standard of Review

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010)) (quoting 18 U.S.C. § 3582(b)). One such "exception to the general rule of finality" is the court's power under 18 U.S.C. § 3582(c)(2) to reduce the prison term of a defendant who was sentenced based on a guidelines range that has subsequently been lowered by the United States Sentencing Commission. Id. at 824-25.

District courts proceeding under § 3582(c)(2) follow a two-step approach. United States v. Candelaria–Silva, 714 F.3d 651, 656 (1st Cir. 2013). First, the court determines "the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Id. (quoting Dillon, 560 U.S. at 827). Second, the court "consider[s] any applicable § 3553(a) factors and

determine[s] whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827. As such, even where the defendant has been found eligible to seek a § 3582(c) reduction, "the district judge may conclude that a reduction would be inappropriate." Freeman v. United States, 564 U.S. 522, 532 (2011).

### III. Discussion

Perez contends that he is eligible for a sentence reduction pursuant to U.S.S.G. § 4C1.1(a)(7), the adjustment for certain zero-point offenders, which allows for a two level downward adjustment of the offense level for any defendant who meets certain criteria, including that the defendant "did not possess . . . a firearm or other dangerous weapon . . . in connection with the offense." Def.'s Mem. 1 [Doc. No. 373]. The parties dispute (a) whether the firearms recovered from the stash house disqualify Perez as a zero-point offender under U.S.S.G. § 4C1.1(a)(7); and (b) if he is not disqualified, whether the § 3553(a) factors warrant a further reduction where Perez was given a below guidelines sentence. The court considers each argument in turn.

### A. *Perez's "Possession" of the Firearms in the Stash House*

Perez contends the possessory element of U.S.S.G. § 4C1.1(a)(7) differs from the possessory element of U.S.S.G. § 2D1.1(b)(1), which imposes a two level enhancement to the base offense level for a drug trafficking offense "[i]f a dangerous weapon (including a firearm) was possessed." He argues that the language of § 4C1.1(a)(7) tracks the safety-valve provisions of 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2, which allow a court to impose a sentence without regard to a statutory minimum sentence where the defendant meets certain criteria, including that the defendant "did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense."

The government does not dispute that application of the § 2D1.1 enhancement, which "requires mere possession," may not be dispositive of eligibility under the zero-point offender guideline and that courts have generally found that 4C1.1(a)(7) firearm-possession disqualification is based on 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2. Gov't's Resp. 6 [Doc. No. 373].[1] Instead, the government contends that Perez has failed to prove by a preponderance of the evidence that he did not possess the firearms "in connection with the offence" for purposes of § 4C1.1.

Given the parallel language, the court finds that the "zero-point offender" disqualification tracks the "safety valve" disqualification under 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2(2), see Def.'s Mem. 5-6 [Doc. No. 370]; Gov't's Resp. 6 [Doc No. 373]. The court finds further that the differing burden imposed on a defendant for a possession enhancement and a safety-valve adjustment is instructive. In United States v. Anderson, the district court applied both a two-level sentencing enhancement for firearm possession under § 2D1.1(b)(1) and a two-level sentence reduction under the "safety valve" provision of § 5C1.2. 452 F.3d 87, 90 (1st Cir. 2006). The First Circuit explained that to garner § 2D1.1(b)(1)'s sentence enhancement, "the government has the initial burden of establishing 'that a firearm possessed by the defendant was present during the commission of the offense,'" and once the government has made that showing, "the burden shifts to the defendant to persuade the factfinder that a connection between the weapon and the crime is clearly improbable." Id. (quoting United States v. McDonald, 121 F.3d 7, 10 (1st Cir. 1997)). By contrast, to trigger the "safety valve," "the defendant has the burden of

---

[1] The government nonetheless does rely in part on Perez's counsel's argument at sentencing, where he expressly conceded a § 2D1.1(b)(1) sentencing enhancement for firearm possession. Gov't's Resp. 7 [Doc. No. 373].

establishing, by a preponderance of the evidence, that he did not possess the firearm in connection with the offense." Id. (citing United States v. Miranda-Santiago, 96 F.3d 517, 529 n.25 (1st Cir. 1996).

Given the different standards, the court finds Perez's counsel's argument at sentencing, where he expressly refused to challenge a § 2D1.1(b)(1) sentencing enhancement for firearm possession, of no import as to the question of possession for the zero-point offender guideline. There is also no evidence in the record to suggest that Perez had "actual possession"[2] of the gun and the government does not argue otherwise. In United States v. McLean, the First Circuit held that not only actual but also constructive possession of a firearm renders a defendant ineligible for the "safety valve." 409 F.3d 492, 501 (1st Cir. 2005). Applying this rule, the issue here is whether Perez had constructive possession of the firearm for purposes of the zero-point offender guideline.

"Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." Id. (quoting United States v. Carlos Cruz, 352 F.3d 499, 510 (1st Cir. 2003)). "As is true of actual possession, constructive possession does not require actual ownership of the weapon . . . and can be sole or joint." Id. (internal citations omitted). "Moreover, the requisite knowledge and intention can be inferred from circumstances, such as a defendant's control over the area where the contraband is found (e.g., defendant's home or automobile) . . . . But knowledge must be

---

[2] "Actual possession is generally defined as 'the state of immediate, hands-on physical possession.'" United States v. McLean, 409 F.3d 492, 500 n.9 (1st Cir. 2005) (quoting United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994).

fairly inferable from the circumstances." Id. (internal citations omitted). "[M]ere proximity to a weapon is not sufficient to show . . . constructive possession." United States v. Weems, 322 F.3d 18, 24 (1st Cir. 2003). Thus, "[t]here must be some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it." McLean, 409 F.3d at 501 (citing In re Sealed Case, 105 F.3d 1460, 1463 (D.C. Cir. 1997)).

In McLean, the government proffered evidence that (1) the firearm in question was seized from defendant McLean's trailer (which was "the focus of the drug operation"); (2) McLean and his co-conspirators were arrested there; (3) McLean knew his co-conspirators wanted to acquire firearms; and (4) McLean knew some of his co-conspirators were armed because they had "threatened his daughter at gunpoint." 409 F.3d at 502. The government further established that (1) defendant Berguette had stayed in the room where the firearm was found; (2) Berguette's suitcase was found in the closet with the firearm; and (3) one of his co-conspirators had stated that Berguette acquired the firearm for himself. Id. at 503. From this evidence, the First Circuit concluded that neither McLean nor Berguette had sufficient "knowledge" to constitute constructive possession of a firearm—and thus could not be disqualified from the "safety valve." Id. at 502-03. In contrast, it was undisputed that defendant Feliz had knowledge of the gun, knew where it was hidden, engaged in drug sales in close proximity to the hidden weapon and was arrested in the room with drugs and drug proceeds around him. Id. at 504. The First Circuit concluded that, with knowledge conceded, the power component was met where Feliz was close enough to the firearm to pick it up, and that there was a sufficient basis for inferring intent where

Feliz could have intended to use the gun for protection in the event of trouble with one of the drug sales. Id.³

In the present case, evidence of Perez's constructive firearm possession is even weaker than McLean and Berguette's possession in McLean. On November 14, 2019, police observed Defendant conducting a drug transaction outside 17 Avila Road. PSR ¶ 36a. When Perez became aware of law enforcement's presence, he attempted to flee through the rear door of 17 Avila Road and was subsequently arrested. Id. ¶ 36b. From his person, investigators seized keys to an entirely different residence—449 Old Colony Avenue. See Report of Investigation ¶ 12 [Doc. No. 250-1]. Later, during a search of 17 Avila Road's front bedroom, police found two handguns in a drawer next to the bed. Id. ¶ 14. On the floor in the closet, police located a trigger lock and dummy magazine, along with an apparent drug ledger and a photograph of Defendant. Id. ¶ 16. During a search of 17 Avila Road's rear bedroom, in a bureau drawer, police found two pistol magazines and a plastic bottle with ammunition. Id. ¶ 21. In both the front and rear bedrooms, and in other locations throughout 17 Avila Road, police found fentanyl, packaging materials, and other drug paraphernalia. Id. ¶¶ 17-23, 25.

That evening, police spoke to two males who exited 17 Avila Road after looked around the apartment with flashlights. Id. ¶¶ 28-30. One of the men told police that his "uncle Meme" lived at the residence; he also said that another one of his "uncles," Jose Luis, was en route to 17 Avila Road (although Jose Luis never actually arrived). Id. ¶¶ 28-29.

---

³ The government does not include any discussion of the facts in McLean, and points instead to United States v. Cooper, which denied a motion for a "zero-point offender" reduction after the defendant's original sentence had been enhanced for firearm possession under § 2D1.1(b)(1). No. 1:18-CR-97-4, 2024 WL 3093575 (E.D. Tenn. June 20, 2024). The court follows the safety valve eligibility analysis and standards under McLean rather than the somewhat contrary zero-point offender analysis from an out-of-circuit, district court decision.

The government contends that Perez visited 17 Avila Road (his stash house) "on a daily basis to retrieve drugs for distribution[.]" Gov't's Resp. 8 [Doc. No. 373]. However, the use of the premises, even as a residence and drug trafficking location as in McLean, is not alone sufficient for constructive possession. The government also notes that police found Perez's photograph in the front bedroom of 17 Avila Road. Id. However, a photograph of Perez does not amount to "some action, some word, or some conduct that links [Defendant] to the contraband and indicates that he had some stake in it." McLean, 409 F.3d at 501 (citing In re Sealed Case, 105 F.3d 1460, 1463 (D.C. Cir. 1997)). Indeed, as Defendant argues, the record does not show that he owned the photograph at issue. Moreover, even in McLean, where a firearm was found in close proximity to defendant Berguette's suitcase, the First Circuit found that no evidence of knowledge of the hidden gun, and thus declined to find constructive firearm possession that would disqualify Berguette from the "safety valve." McLean, 409 F.3d at 503.

Therefore, finding neither evidence of actual possession nor that Perez has admitted to "possession" within the meaning of § 4C1.1(a)(7), and where the evidence does not support Perez's knowledge and intention to exercise control over the gun necessary for constructive possession, the court finds that Perez is eligible for a sentence reduction under § 4C1.1.

B.   *The § 3553(a) Factors*

Next, the court "consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827. Given the court's determination that Perez is eligible for the zero-point offender reduction, the only new information not considered at sentencing is the revised guideline sentencing range. U.S.S.G. § 3553(a)(4). With the zero-point offender reduction, Perez's applicable guideline range is 70-87 months. At sentencing, the court

9

considered the seriousness of the offenses, the impact of the opioid crises, the offense level enhancement applied for the firearm, and reasons for sentencing at a variance from the original 87-108 month range, including unwarranted sentencing disparities, Perez's medical difficulties, and his likely deportation. The court weighed those factors together with the 87-108 month guideline range; now, the court considers the same factors, but with a guideline range of 70-87 months. Accordingly, the court finds that a sentence of 70 months is appropriate.

IV. Conclusion

For the foregoing reasons, Perez's <u>Motion Pursuant to 18 U.S.C. § 3582(c)(2) Based on the New Sentencing Guideline Downward Adjustment for Certain Zero-Point Offenders</u> [Doc. No. 346] is GRANTED and he is resentenced to a term of 70 months.

IT IS SO ORDERED.

October 16, 2024                              /s/Indira Talwani
                                              United States District Judge